OPINION
 

 Per Curiam:
 

 In 1990 and 1991, Peter Eliades leased from Edward and Marion Deeb certain real property located at 3455-3457-3459 and 3461 Industrial Road in Las Vegas. Eliades used the property to house a night club and bar called Fuddy Duddy’s. The leases provided for a ten-year term with an additional ten-year option to renew. The leases contained a condemnation clause in paragraph 38 which provided that the leases would terminate “[i]n the event the Demised Premises, or any portion thereof, are condemned by any proper authority.”
 

 In April 1993, the Board of Directors of the Nevada Department of Transportation (“NDOT”) adopted Condemnation Resolution No. 345. The resolution authorized and directed NDOT to acquire the Deebs’ property on Industrial Road, including that leased by Eliades. In February 1993, NDOT approached the Deebs and inquired about purchasing their property.
 

 The Deebs sent Eliades a letter, notifying him that NDOT was taking the property, and that, pursuant to the condemnation clause in Eliades’ leases, the leases would terminate upon the
 
 *1454
 
 close of escrow. On June 28, 1993, NDOT and the Deebs entered into a purchase agreement.
 

 In February 1994, Eliades filed a complaint against NDOT, the Deebs, Deeb Investments, Inc., and others, seeking to recover compensation for the value of his leasehold. NDOT filed a counterclaim and later moved for summary judgment, which was denied. In March 1994, Eliades filed an application for a temporary restraining order and preliminary injunction to halt NDOT’s plans to demolish the property on Industrial Road. The district court denied the application.
 

 In July 1995, Eliades filed a motion for summary judgment. NDOT, joined by the Deebs, filed a counter-motion for summary judgment. The district court granted the counter-motion as to NDOT only. The district court certified the order as final for purposes of NRCP 54(b). Eliades appeals.
 

 Eliades argues that the district court erroneously concluded that NDOT’s purchase of the Deeb property triggered the condemnation clause in his leases. Eliades argues that, in order for a condemnation to take place, condemnation proceedings must be brought in district court by way of a verified complaint, the district court must enter a final order of condemnation, and interested parties must be allowed to defend their claims.
 
 See
 
 NRS 37.060; NRS 37.160; NRS 37.080. Eliades contends that NDOT’s failure to comply with statutory requirements compels a finding that no condemnation occurred and that, therefore, his leases did not terminate.
 

 NDOT argues that a purchase under the threat of condemnation is the equivalent of a condemnation.
 
 See
 
 Direct Mail Services, Inc. v. State, 929 F.2d 672 (10th Cir. 1984) (suggestion that sale under threat of condemnation constituted a simple sale rather than the exercise of state’s power of eminent domain was not supported by the evidence); Western Airlines, Inc. v. Lathrop Co., 499 P.2d 1013 (Alaska 1972) (provision that lease would terminate if building was “taken by eminent domain proceedings, or by the action of any city or public authority” construed to mean that lease terminates whenever the leasehold is taken pursuant to actions that are tantamount to a taking under the power of eminent domain); Vincent v. Redev. Auth., Etc., 487 A.2d 1024, 1025 (Pa. Commw. Ct. 1985) (“the events culminating in the conveyance by deed in lieu of condemnation constituted a ‘condemnation proceeding.’ ”);
 
 see also
 
 Lanning v. City of Monterey, 226 Cal. Rptr. 258, 262 (Ct. App. 1986) (city’s acquisition of real property through purchase in lieu of its exercise of power of eminent domain was “essential equivalent” of exercise of eminent domain.)
 

 
 *1455
 
 We are persuaded by the above authorities and conclude that a purchase made under the threat of condemnation is the same as a judicial condemnation. This was not a sale on the open market. The Board of Directors of NDOT adopted a resolution authorizing and directing NDOT to acquire the Deebs’ property on Industrial Road, including that leased by Eliades. The negotiation between NDOT and the Deebs appears to be a good faith effort to agree on the amount of compensation. Therefore, we conclude that the district court did not err in concluding that the condemnation clauses terminated Eliades’ leases.
 

 The condemnation clause in Eliades’ leases provided: “Lessor shall be entitled to and shall receive the entire award arising out of the condemnation of all or a portion of the Demised Premises except as to trade fixtures.” Eliades never received compensation for his trade fixtures. During oral argument, NDOT conceded that it owed Eliades compensation for his trade fixtures and tenant owned improvements. We therefore reverse the order of the district court granting NDOT’s counter-motion for summary judgment and remand this case for a determination of the value of these trade fixtures and tenant owned improvements.
 
 [1]
 

 [1]
 

 In light of this decision, we conclude that it is unnecessary to reach the issue of whether the mutual release is valid.
 

 We have considered all other issues on appeal and find them to be without merit.