Beverly COLEMAN, Sonya May, and Racine Damron, Appellants,

CITY OF PIKEVILLE, Appellee.

No. 1997–CA–003145–MR.

Court of Appeals of Kentucky.

June 11, 1999.

Herman W. Lester, Pikeville, for Appellant.

James R. Cox, Louisville, KY, Russell H. Davis, Jr., Pikeville, KY, for Appellee.

Before: BUCKINGHAM, COMBS, and McANULTY, Judges.

BUCKINGHAM, Judge.

Appellants, Beverly Coleman, Sonya May, and Racine Damron, appeal from a judgment of the Pike Circuit Court in favor of Appellee, City of Pikeville (the City). We affirm.

In 1984, the Pikeville Urban Renewal and Community Development Agency (PURCDA) sent a letter to Ola Goff, the appellants' predecessor in interest to the subject real property, offering to purchase the 1.348–acre tract.[1] The letter apparently stated that if Goff did not agree to the

---

1. Neither the letter nor a copy of it is in the trial court record which has been provided to us.

price offered, the property would then be condemned pursuant to the Eminent Domain Act of Kentucky found in Kentucky Revised Statutes (KRS) 416.540 through 416.680. PURCDA desired to purchase the property as a part of the Riverfill Development Plan which involved a rerouting of a fork of the Big Sandy River, U.S. Highway 23, and a railroad out of the City's downtown commercial area. Apparently in response to the letter and its underlying threat of condemnation, Goff and others who owned interests in the property sold it to PURCDA on October 1, 1994.[2] Sixty-six thousand cubic yards of fill material was subsequently placed on the property, and water lines and a roadway were thereafter constructed over it.

In 1990, PURCDA was dissolved by the City, and it deeded all property owned by it to the City prior to its dissolution. In 1992 and 1993, the appellants notified the City that they were interested in repurchasing the property for the same amount PURCDA had paid for it. The City refused to sell the property to the appellants and made plans to sell it at public auction.

The appellants then filed a complaint in the Pike Circuit Court and obtained an injunction to prevent the City from disposing of the property until the respective rights of the parties could be determined. They now contend that they are entitled to repurchase the property pursuant to KRS 416.670(1) which states as follows:

> Development shall be started on any property which has been acquired through condemnation within a period of eight (8) years from the date of the deed to the condemnor or the date on which the condemnor took possession, whichever is earlier, for the purpose for which it was condemned. The failure of the condemnor to so begin development shall entitle the current landowner to repurchase the property at the price the condemnor paid to the landowner for the

property. The current owner of the land from which the condemned land was taken may reacquire the land as aforementioned.

The appellants argue that they are entitled to repurchase the property at the price paid by PURCDA in 1984 because development was not started on the property within eight years from the date of the deed. They contend that "[t]he only thing that had been done to the property, in the statutory eight (8) year period, that could even be construed as development was the dumping of dirt on it."

The case was assigned to Judge Charles E. Lowe, Jr., in Division No. II of the Pike Circuit Court, and the case was tried before the court without a jury on April 22, 1996. Post-trial briefs were filed by the parties as directed by Judge Lowe, but on February 26, 1997, Judge Lowe signed an order transferring the case to Division No. I of the Pike Circuit Court for the reason that "the undersign's Bench Clerk is the Daughter–In–Law of one of the Plaintiff's herein...."

Various motions were filed by the parties, and an order was entered assigning a hearing on the motions for April 25, 1997, before Judge Eddy Coleman, the Division No. I judge. We see no indication in the record that a hearing was held on that day, but on November 10, 1997, over six months later, a findings of fact, conclusions of law, and judgment was entered by Judge Coleman. In this judgment, Judge Coleman noted that considerable fill material had been placed on the property within the eight-year period from the date of the deed and that the appellants were not entitled to repurchase the property because "[t]he statute ends the right of redemption when development begins or starts for situations like the present one because the subject property is simply not the same property that was acquired by the Ola Goff deed."[3] Judge Coleman also

---

**2.** We have not reviewed the contents of the deed, as it was not provided in the record.

**3.** Judge Coleman also stated that "[t]he condition of the subject property was remarkably changed at public expense."

held that the appellants were not entitled to repurchase the property because the property was not condemned but was sold pursuant to an agreement, and he stated that "KRS 416.670 is a part of the procedure used when there is not an agreement between the property owner and the condemnor. In this action the parties agreed.... Because they reached an agreement[,] KRS 416.670(1) does not apply." This appeal followed.

The appellants' first argument is that the trial court erred in its determination that no development was started on the property within eight years from the date of the deed. They state that "the only change ... is that it has been filled with dirt." On the other hand, the City argues that the property was transformed with the fill material as well as the installation of utilities and the roadway within the eight-year period. We hold that the trial court's determination, that the dumping of 66,000 cubic feet of fill material on the 1.348 acres of property constitutes the starting of development within the meaning of KRS 416.670(1), is not clearly erroneous. CR 52.01; *Owens–Corning Fiberglas Corp. v. Golightly*, Ky., 976 S.W.2d 409, 414 (1998).

The appellants also contend that even if the fill material is considered to be the start of development, such development was abandoned in 1990 when PURCDA was dissolved by the City. They cite no authority, however, that would allow them to repurchase the property in the event the development was subsequently abandoned, and the statute requires only that the development be *started* within the eight-year period. We agree with the City that the dissolution of PURCDA is irrelevant to a determination of whether the appellants had redemption rights under the statute.

The appellants' second argument is that the trial court erred in holding that the right to repurchase does not exist when the property was not obtained through condemnation. While they admit that the property was not condemned, they contend that the statute should apply when the property is acquired under threat of condemnation. The appellants do not cite any authority to support their argument, however.

We conclude that the trial court was correct in its determination that KRS 416.670(1) was not applicable since the property was not condemned but was sold by agreement. The statute clearly applies only to property "acquired through condemnation." While the statute apparently has not been subject to interpretation by Kentucky courts on this issue, we agree with the trial court's interpretation. However, *see Fuddy Duddy's v. State of Nevada Dept. of Transportation*, 113 Nev. 1452, 950 P.2d 773, 775 (1997), where the Nevada Supreme Court held that "a purchase made under the threat of condemnation is the same as a judicial condemnation."

The appellants' last argument is that the City does not have standing to assert rights granted to PURCDA. They cite no authority to support their argument, and we fail to see how this issue would affect their right to repurchase the property when they are otherwise unable to do so for the aforementioned reasons.

The judgment of the Pike Circuit Court is affirmed.

ALL CONCUR.