205 P.3d 755 (2009)
Treva L. KNOP, Arlene Barlow, Rodney Barlow, Myrnice M. Reimer, and Gary Reimer, Appellants,
v.
GARDNER EDGERTON UNIFIED SCHOOL DISTRICT NO. 231, Appellee.
No. 100,054.
Court of Appeals of Kansas.
April 10, 2009.
*758 Michael A. Millett, of Law Offices of Michael A. Millett, P.A., of Overland Park, for appellants.
W. Joseph Hatley, of Spencer Fane Britt & Browne LLP, of Kansas City, Missouri, for appellee.
Before McANANY, P.J., MARQUARDT and MALONE, JJ.
MALONE, J.
Treva L. Knop, Arlene Barlow, Rodney Barlow, Myrnice M. Reimer, and Gary Reimer, plaintiffs, appeal the district court's decision granting Gardner Edgerton Unified School District No. 231's (U.S.D. No. 231) motion to dismiss the plaintiffs' petition for failure to state a claim upon which relief can *759 be granted. U.S.D. No. 231 purchased land from the plaintiffs under threat of condemnation for the stated purpose of building a school. Less than 2 years later, without building a school on the land, U.S.D. No. 231 sold the property to a developer for a profit of over one million dollars. Plaintiffs filed a petition for breach of contract against U.S.D. No. 231 and sought to recover the profit. For the reasons set forth herein, we conclude the district court did not err in granting the motion to dismiss.
Prior to the summer of 2004, the plaintiffs owned 80 acres of land located in Johnson County, Kansas. Through letters and telephone calls, U.S.D. No. 231 had expressed an interest in acquiring the property from the plaintiffs. U.S.D. No. 231 informed the plaintiffs that it had purchased 40 acres of land adjacent to the plaintiffs' property and the school district wanted the plaintiffs' land for the purpose of building an elementary, junior high, and high school. U.S.D. No. 231 repeatedly indicated to the plaintiffs that if they did not sell the property, then the school district intended to condemn the land by use of its powers of eminent domain.
On August 7, 2004, the parties executed a real estate purchase agreement. The pertinent sections of the contract stated:
Under Section 2, U.S.D. No. 231 agreed to pay the plaintiffs $18,500 per acre for the land.
Under Section 4, the plaintiffs agreed to deliver a general warranty deed suitable for recording and conveying to U.S.D. No. 231 a good, marketable, and indefeasible fee simple title to the land, subject only to covenants, easements, and restrictions of record, and other encumbrances expressly approved by U.S.D. No. 231 in writing.
Under Section 9, if U.S.D. No. 231, prior to closing, discovered a condition that caused the land to be unsuitable for school purposes, then it would notify the plaintiffs of the condition and give them 30 days to correct the condition. If the plaintiffs were unable to correct the condition within 30 days, then U.S.D. No. 231 could: (1) proceed with the purchase, (2) give the plaintiffs additional time to correct the condition, or (3) cancel the agreement to purchase the land.
Under Section 13, the parties agreed that the covenants, representations, and warranties set forth in the Agreement survived the closing and delivery of the deed.
Under Section 21, U.S.D. No. 231 stated that it was purchasing the land in lieu of proceeding with any condemnation action. Furthermore, U.S.D. No. 231 stated that it was purchasing the land for the purpose of building a school and/or for other school purposes.
The parties closed on the contract on December 16, 2004. The total price U.S.D. No. 231 paid for the land was $1,433,154.30 (approximately 77.5 acres sold at $18,500 per acre). On July 26, 2006, the plaintiffs learned from their local newspaper that U.S.D. No. 231 had agreed to sell the land to a developer. The school district subsequently sold the land to Gardner Property LLC for $2,476,470.40, or approximately $32,000 per acre.
On September 13, 2007, the plaintiffs filed a petition for breach of contract against U.S.D. No. 231. According to the plaintiffs, U.S.D. No. 231 breached the contract when it sold the land to a developer after promising it would use the land for school purposes. The plaintiffs did not attempt to enjoin the school district from selling the land. Instead, the plaintiffs sought judgment against U.S.D. No. 231 for $1,043,316.10, representing the profit the school district realized from the sale of the land.
U.S.D. No. 231 filed a motion to dismiss the petition pursuant to K.S.A. 60-212(b)(6) for failure to state a claim upon which relief can be granted. In the motion, U.S.D. No. 231 stated that the plaintiffs had conveyed an indefeasible fee simple title to the land and, therefore, the school district could do with the land whatever it wished. U.S.D. No. 231 contended that its statement in the contract concerning the purpose for buying the land was merely a general purpose clause expressing the school district's intent at the time the contract was executed and it did not place a condition or covenant on the land that restricted its use.
*760 The plaintiffs filed a response to the motion to dismiss and argued that because they sold their land to U.S.D. No. 231 under threat of condemnation, the school district's acquisition of the land constituted a taking under the Eminent Domain Procedure Act, K.S.A. 26-501 et seq., and, as a result, K.S.A. 2008 Supp. 72-8212a applied to the transaction. According to the plaintiffs, this statute provided them with an option to repurchase the property from the school district at the contract price when the school district failed to use the property for school purposes.
On December 10, 2007, the district court conducted a hearing on the motion to dismiss and the parties argued their respective positions. On January 4, 2008, the district court filed a memorandum opinion and granted the school district's motion. The district court determined the petition failed to state a claim for breach of contract. The district court agreed with U.S.D. 231 that its statement in the contract concerning the purpose for buying the land was merely a general purpose clause expressing the school district's intent at the time the contract was executed and it did not place a condition or covenant on the land that restricted its use. Furthermore, the district court rejected the plaintiffs' argument that because they sold their land to U.S.D. No. 231 under threat of condemnation, the school district's acquisition of the land constituted a taking under the Eminent Domain Procedure Act, and, as a result, K.S.A.2008 Supp. 72-8212a applied to the transaction. The plaintiffs timely appeal.
On appeal, the plaintiffs claim the district court erred in granting U.S.D. No. 231's motion to dismiss. The plaintiffs contend that the district court should have found the petition stated sufficient facts to support a claim of breach of contract. Furthermore, the plaintiffs argue that the district court failed to consider whether the facts alleged in the petition would have allowed the plaintiffs to prevail against the school district on any other possible theory. Finally, the plaintiffs argue that because they sold their land to U.S.D. No. 231 under threat of condemnation, the school district's acquisition of the land constituted a taking under the Eminent Domain Procedure Act, and, as a result, K.S.A.2008 Supp. 72-8212a applied to the transaction.
"When a motion to dismiss under K.S.A. 60-212(b)(6) raises an issues concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition." Halley v. Barnabe, 271 Kan. 652, 656, 24 P.3d 140 (2001). "The question for determination is whether in the light most favorable to the plaintiff and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim." 271 Kan. at 656, 24 P.3d 140.
When the district court has granted a motion to dismiss for failure to state a claim, the appellate court must accept the facts alleged by plaintiff as true, along with any inferences that can be reasonably drawn therefrom. The appellate court then decides whether those facts and inferences state a claim based on plaintiff's theory or any other possible theory. Nungesser v. Bryant, 283 Kan. 550, 559, 153 P.3d 1277 (2007).

Breach of contract claim
The plaintiffs first argue that the district court should have found the petition stated sufficient facts to support a claim of breach of contract. The interpretation and legal effect of a written instrument are questions of law over which an appellate court exercises unlimited review. McGinley v. Bank of America, N.A., 279 Kan. 426, 431, 109 P.3d 1146 (2005).
"The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction. [Citation omitted.]" Anderson v. Dillard's Inc., 283 Kan. 432, 436, 153 P.3d 550 (2007). Here, neither party suggests that the terms of the written contract are unclear or ambiguous.
The district court found that the language of the contract unequivocally stated *761 that the plaintiffs intended to convey an indefeasible fee simple interest in the land to U.S.D. No. 231. We agree. The written contract stated that the plaintiffs agreed to sell to U.S.D. No. 231 all of their "right, title, and interest in that certain real property located in Johnson County, Kansas ... together with all appurtenances, improvements, and fixtures thereon, and subject to all easements, restrictions, and rights of way affecting said real property and now of record." Furthermore, the plaintiffs agreed to deliver to the title company involved in the transaction a general warranty deed "suitable for recording and conveying to [U.S.D. No. 231] good, marketable, and indefeasible fee simple title to the Premises, subject only to taxes for the year 2004 not yet due and payable; covenants, easements, and restrictions of record; and other encumbrances expressly approved by Purchaser in writing...."
K.S.A. 58-2202 states that "every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant." Here, there was no reverter clause contained in the contract and no language to indicate that the plaintiffs intended to convey to U.S.D. No. 231 anything less than an indefeasible fee simple interest in the land. Generally, when a seller conveys an indefeasible fee simple interest in the land, the purchaser is free to use the land for whatever purpose it wishes, subject to existing restrictions of record.
Even though U.S.D. No. 231 received a fee simple interest in the land from the plaintiffs, the plaintiffs argue that the written contract contained a covenant or restriction preventing the school district from using the land for any purpose other than building a school. The plaintiffs cite Section 21 of the real estate purchase agreement, which provides that "purchaser hereby represents and warrants... that the Premises is being purchased for the purpose of building a school and/or other school purposes on the Premises." The purchasers argue that this contract language created a covenant running with the land and U.S.D. No. 231 breached the contract when it resold the property to a developer without building a school.
U.S.D. No. 231 argues, and the district court agreed, that the contract language did not create a restrictive covenant running with the land that prevented the school district from conveying the land to a third party. Instead, U.S.D. No. 231 contends that its statement in the contract concerning the purpose for buying the land was merely a general purpose clause expressing the school district's intent at the time the contract was executed and it did not place a condition or covenant on the land that restricted its use.
A well-settled rule is that covenants and agreements restricting the free use of property are strictly construed against limitations upon such use. Such restrictions will not be aided or extended by implication or enlarged by construction. Doubt will be resolved in favor of the unrestricted use of property. South Shore Homes Ass'n v. Holland Holiday's, 219 Kan. 744, 751, 549 P.2d 1035 (1976). Furthermore, "[a] promise must also be distinguished from a mere statement of intention...." 1 Williston on Contracts § 1:2 (4th ed. 2007). One legal encyclopedia has stated:
"Restrictive covenants must be certain; they will not be applied unless the language used is clear and unambiguous. So, a restriction should be expressed in clear and certain terms in the deed, or it should contain a promise, agreement, or undertaking on the grantee's part, or it should contain such terms as have a certain legal operation from which a covenant would necessarily arise." 26A C.J.S., Deeds § 344, p. 368.
We agree with the district court that U.S.D. No. 231's statement in the contract concerning the purpose for buying the land was merely a general purpose clause expressing the school district's intent at the time the contract was executed. As U.S.D. No. 231 notes, Section 21 of the contract provides that the property "is being purchased" for the purpose of building a school. This statement is in the present tense. However, the school district never represented or warranted in the contract that the property *762 will only be used for school purposes. The isolated contract language about the purpose for buying the land cannot reasonably be construed in such a way as to conclude that U.S.D. No. 231 promised to the plaintiffs that it would forever use the land for school purposes.
This interpretation of U.S.D. No. 231's general purpose clause is logical when read in conjunction with the rest of the contract. Section 9 of the contract gave U.S.D. No. 231 the right to proceed with the purchase of the land even if it was determined prior to closing that the land was not suitable for school purposes. To conclude that the contract restricted U.S.D. No. 231's use of the land to only school purposes, when that same contract also gave U.S.D. No. 231 the right to purchase the land if it could not be used for school purposes, would result in an unreasonable interpretation of the contract.
Furthermore, the plaintiffs' own evidence corroborates U.S.D. No. 231's intention to purchase the land for school purposes. Exhibit B attached to the plaintiffs' petition included a letter from U.S.D. No. 231's superintendent expressing an interest in purchasing the 80-acre tract of land for the purpose of building an elementary school. According to the letter, the board of education believed that purchasing land at the present time for future school needs would save the taxpayers money. The plaintiffs have no evidence to dispute that when the real estate purchase agreement was executed on August 7, 2004, the school district did not intend to use the land to build a school or for other school purposes.
Section 4 of the contract provided that the plaintiffs agreed to deliver a general warranty deed to U.S.D. No. 231 at closing. This deed is not included in the record on appeal. However, if the plaintiffs intended to create a covenant running with the land that restricted the school district's use of the property, one would expect such a covenant to have been clearly expressed in the deed. The language in Section 13 of the contract indicating that any covenants set forth in the Agreement survived the closing and delivery of the deed is insufficient to create a covenant running with the land because the Agreement created no covenant in the first place.
Finally, even if the contract language created a restrictive covenant preventing the school district from using the land for any purpose other than building a school, we note that such a restrictive covenant is usually enforced by injunction. South Shore Homes Ass'n, 219 Kan. at 751, 549 P.2d 1035. Here, the plaintiffs made no attempt to enjoin the school district from selling the land. Instead, the plaintiffs sought a money judgment against U.S.D. No. 231 representing the profit the school district realized from the sale of the land. Thus, to the extent the plaintiffs' equitable rights may have been violated by the school district's attempt to sell the land, the plaintiffs sought an incorrect remedy from the district court.
We conclude that U.S.D. No. 231's statement of purpose for buying the land did not create a restrictive covenant running with the land and the school district did not breach the contract when it resold the property to a developer without building a school. As this was the plaintiffs' only claim in their petition, the district court did not err in dismissing the petition for failure to state a claim under a breach of contract theory.

Other possible theories
The plaintiffs do not dispute that their petition alleged only a breach of contract claim. However, the plaintiffs argue that the district court failed to consider whether the facts alleged in the petition would have allowed the plaintiffs to prevail against the school district on any other possible theory. A district court may not dismiss a petition under K.S.A. 60-212(b) unless the facts and inferences fail to state a claim on any possible theory. Nungesser, 283 Kan. at 559, 153 P.3d 1277.
The plaintiffs' appeal brief alludes to a potential fraud claim against U.S.D. No. 231. It appears that the plaintiffs' fraud claim would be based on an allegation that U.S.D. No. 231 misrepresented its purpose for acquiring the plaintiffs' land and that this misrepresentation induced the plaintiffs to enter into the contract with the school district. *763 The elements of fraud are: (1) The defendant made a false statement concerning an existing and material fact; (2) the defendant knew the statement was false or recklessly made the statement without knowing its validity; (3) the defendant intentionally made the statement for the purpose of inducing the plaintiff to act upon it; (4) the plaintiff reasonably relied and acted upon the defendant's statement; and (5) the plaintiff sustained damage by relying upon the statement. PIK Civ. 4th 127.40; Bomhoff v. Nelnet Loan Services, Inc., 279 Kan. 415, 422, 109 P.3d 1241 (2005).
However, the plaintiffs' petition alleged no facts to support a claim that U.S.D. No. 231 deceived the plaintiffs about the reason for purchasing the land at the time the real estate purchase agreement was executed. As previously indicated, the plaintiffs' own petition provides evidence that U.S.D. No. 231 intended to purchase the land for school purposes. Exhibit B to the plaintiffs' petition included a letter from U.S.D. No. 231's superintendent expressing an interest in purchasing the 80-acre tract of land for the purpose of building an elementary school. The fact that the school district resold the land 2 years later without building a school is insufficient to create an inference of fraud.
Furthermore, any possible fraud claim against U.S.D. No. 231 would have been procedurally barred for two reasons. First, fraud claims must be pled with particularity. K.S.A. 60-209(b). Second, any fraud claim against U.S.D. No. 231 had to be brought under the Kansas Tort Claims Act, K.S.A. 75-6101 et seq. See K.S.A.2008 Supp. 75-6102(b) (defining "municipality" as, among other things, a "school district"). Thus, before the plaintiffs could file a fraud claim against U.S.D. No. 231, they would have been required to provide written notice to the school district pursuant to K.S.A.2008 Supp. 12-105b.
The plaintiffs also argue in their brief that the facts alleged in their petition could support a claim under the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 et seq. The KCPA applies to deceptive or unconscionable acts or practices committed by "suppliers" in connection with "`consumer transactions.'" K.S.A. 50-626(a); K.S.A. 50-627(a). K.S.A. 50-624(c) defines "consumer transaction" as "a sale, lease, assignment or other disposition for value of property or services within this state ... to a consumer; or a solicitation by a supplier with respect to any of these dispositions." (Emphasis added.) K.S.A. 50-624(b) defines "`consumer'" as "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes." (Emphasis added.) K.S.A. 50-624(j) defines "`supplier'" as:
"[A] manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer. Supplier does not include any bank, trust company or lending institution which is subject to state or federal regulation with regard to disposition of repossessed collateral by such bank, trust company or lending institution."
Here, the KCPA is clearly inapplicable to the transaction between the plaintiffs and U.S.D. No. 231. The plaintiffs were not seeking to acquire property. Instead, they entered into a contract to sell their land to U.S.D. No. 231. Simply stated, based on the facts alleged in the plaintiffs' petition, they were not "consumers" under K.S.A. 50-624(b), U.S.D. No. 231 was not a "supplier" under K.S.A. 50-624(j), and their transaction was not a "consumer transaction" within the meaning of K.S.A. 50-624(c).

Condemnation and K.S.A.2008 Supp. 72-8212a
Finally, the plaintiffs argue that because they sold their land to U.S.D. No. 231 under threat of condemnation, U.S.D. No. 231's acquisition of the land constituted a taking under the Eminent Domain Procedure Act, and, as a result, K.S.A.2008 Supp. 72-8212a applied to the transaction. The plaintiffs argue this statute provided them with an option to repurchase the property from the school district at the contract price when the *764 school district failed to use the property for school purposes.
The plaintiffs' argument involves statutory interpretation. The interpretation of a statute is a question of law over which an appellate court has unlimited review. Genesis Health Club, Inc. v. City of Wichita, 285 Kan. 1021, 1031, 181 P.3d 549 (2008).
K.S.A.2008 Supp. 72-8212a(a) provides:
"A unified school district may acquire by condemnation, for school purposes, any interest in real property, including fee simple title. If, within 10 years after entry of final judgment under K.S.A. 26-511, and amendments thereto, the school district fails to construct substantial buildings or improvements that are used for school purposes on any real property acquired under this subsection, the school district shall notify the original owners or their heirs or assigns that they have an option to purchase the property from the school district for an amount equal to the compensation awarded for the property under the eminent domain procedures act. Such option shall expire if not exercised within a period of six months after the date of the expiration of the 10-year period." (Emphasis added.)
The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determining what the law should or should not be. Winnebago Tribe of Nebraska v. Kline, 283 Kan. 64, 77, 150 P.3d 892 (2007). Furthermore, when a statute is plain and unambiguous, an appellate court does not "speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it." (Emphasis added.) In re K.M.H., 285 Kan. 53, 79, 169 P.3d 1025 (2007).
The plaintiffs cite two cases from other jurisdictions which hold that land sold under threat of condemnation has the same legal effect as if the land was actually taken under eminent domain proceedings. See Bristol v. Ocean State Job Lot Stores of Connecticut, Inc., 284 Conn. 1, 931 A.2d 837 (2007), and Fuddy Duddy's v. State, Dep't Transp., 113 Nev. 1452, 950 P.2d 773 (1997). In both cases, the courts had to determine whether a lease agreement remained enforceable even after the owner sold the premises to a government entity under threat of condemnation. Both leases had condemnation clauses which stated that if the land was condemned, the lease agreement between the owner and the lessee would terminate. In both cases, the courts held that land sold under the threat of condemnation had the same legal effect as if the land was actually taken under eminent domain proceedings and, thus, the lease agreements were terminated when the owner sold the land to the government entity. Bristol, 284 Conn. at 12-14, 931 A.2d 837; Fuddy Duddy's, 113 Nev. at 1454-55, 950 P.2d 773.
The plaintiffs also cite City of Carrollton v. Singer, 232 S.W.3d 790 (Tex.App.2007). In this case, the Singers negotiated a contract to sell property to the City of Carrollton (City) for the construction of a roadway. In exchange for the conveyance, the City agreed to construct a new entrance into the Singers' property. The City completed the roadway project, but the Singers were not satisfied with the quality and appearance of the new entrance. The Singers sued the City for breach of contract and claimed the City did not have immunity from suit because its contract with the Singers was, in essence, a settlement agreement of an eminent domain claim. The Texas Court of Appeals agreed and stated: "An agreement to sell property to a governmental authority for public purpose has the same effect as a formal condemnation proceeding." 232 S.W.3d at 798.
The cases cited by the plaintiffs are all distinguishable from the present case. Bristol and Fuddy Duddy's concerned the enforcement of a lease agreement after a government entity acquired ownership of the land through the threat of condemnation. City of Carrollton involved the issue of immunity from suit after a party sold property to a governmental authority for a public purpose. *765 Here, we are being asked to determine whether the plaintiffs have a statutory right under K.S.A.2008 Supp. 72-8212a(a) to repurchase land from U.S.D. No. 231 when the school district failed to use the land for school purposes. The plaintiffs have cited no case with facts similar to the present case to support their claim that land purchased under threat of condemnation has the same legal effect as if the land was actually taken under eminent domain proceedings.
However, U.S.D. No. 231 has cited a case from another jurisdiction that is more closely on point. In Coleman v. City of Pikeville, 994 S.W.2d 524 (Ky.App.1999), the Kentucky Court of Appeals construed a statute similar to K.S.A.2008 Supp. 72-8212a(a) and held that the statute did not apply when property was sold by contract under threat of condemnation. The landowner in Coleman sold property by contract to a local urban renewal agency which had threatened condemnation if the landowner refused to sell. The agency subsequently deeded the land to the City of Pikeville (City). Under the Kentucky statute, a party acquiring property through condemnation must begin to develop the property for the purpose for which it was condemned within 8 years or the landowner is entitled to repurchase the property at the price paid through condemnation. See Ky. Rev.Stat. § 416.670(1). When it appeared that the property was not being developed after 8 years, the landowner's successors in interest sued the City, claiming a right to repurchase the property under the condemnation statute. However, the court held that the condemnation statute was inapplicable because the property was not condemned but had been sold by agreement. 994 S.W.2d at 526.
In order to determine whether K.S.A.2008 Supp. 72-8212a(a) is applicable to the transaction between plaintiffs and U.S.D. No. 231, we must briefly review the statutory framework under the Eminent Domain Procedure Act, K.S.A. 26-501 et seq. Under K.S.A.2008 Supp. 26-501(b), a public entity wishing to acquire real estate files a petition in the district court of the county where the land is located. The district court then appoints three disinterested residents of the county where the land is located to appraise the value of the property at issue. K.S.A.2008 Supp. 26-504. After the appraisers view the property and take testimony at a public hearing, they file a report with the district court, establishing the compensation due to the owner of the affected property. K.S.A.2008 Supp. 26-505. The condemning authority then has 30 days in which to pay the award into court. Failure to pay the award within the 30 days results in an abandonment of the condemnation. K.S.A.2008 Supp. 26-507.
Assuming the condemning authority pays the appraisers' award into court, the second step of the condemnation process is then triggered. K.S.A.2008 Supp. 26-508 states that either party may appeal from the appraisers' award, and if such an appeal is filed, the district court clerk dockets the appeal as a "new civil action." The district court then conducts a trial de novo to determine the compensation to be given to the owner of the land. K.S.A. 26-511(a) provides:
"If the compensation finally awarded on appeal exceeds the amount of money paid to the clerk of the court pursuant to K.S.A. 26-507, the judge shall enter judgment against the plaintiff for the amount of the deficiency, with interest. If the compensation finally awarded on appeal is less than the amount paid to the clerk of the court pursuant to K.S.A. 26-507, the judge shall enter judgment in favor of the plaintiff for the return of the difference, with interest." (Emphasis added.)
A "final judgment under K.S.A. 26-511" the key language in found in K.S.A.2008 Supp. 72-8212a(a) that triggers a landowner's rightsis only entered if either the condemning authority or the landowner appeals from the appraisers' award. If both the condemning authority and the landowner are satisfied with the appraisers' award, that award is paid into court and the case ends without a "judgment" of any kind being entered. K.S.A.2008 Supp. 26-507.
Based on the plain language of K.S.A.2008 Supp. 72-8212a(a), in order for a former landowner to be able to repurchase his or her land from a school district, three elements must be satisfied: (1) the land at issue must have been taken pursuant to the Eminent *766 Domain Procedure Act, K.S.A. 26-501 et seq., (2) an appeal must have been taken from the original appraisers' award pursuant to K.S.A. 2008 Supp. 26-508, and (3) the appeal must have resulted in a final judgment being entered pursuant to K.S.A. 26-511.
Here, because their was no final judgment entered under K.S.A. 26-511, K.S.A.2008 Supp. 72-8212a(a) did not apply to the transaction. Stated differently, acquiring property under a threat of condemnation is not the same as acquiring property under an actual eminent domain proceeding. U.S.D. No. 231 purchased the plaintiffs' land under written contract, and the amount paid was not determined through any judgment under the Eminent Domain Procedure Act. Under these circumstances, the school district's acquisition of the land did not constitute a taking under the Eminent Domain Procedure Act and K.S.A.2008 Supp. 72-8212a(a) did not apply to grant the plaintiffs an option to repurchase the land at the contract price when the school district failed to build a school.
We appreciate the perceived inequities presented by the outcome of this case. Even the district court judge referred to the result as "distasteful." However, contracts must be enforced according to their plain and unambiguous language, and statutes must likewise be applied according to their plain and unambiguous meaning in order to carry out the legislature's intent. Had the plaintiffs desired an option to repurchase their land from U.S.D. No. 231 if the school district failed to use the land for school purposes, the plaintiffs could have negotiated an enforceable option into the contract. However, courts will not interpret a contract to include language that is not readily found therein. Based on the contract entered between the parties, we conclude that the district court did not err in granting U.S.D. No. 231's motion to dismiss the plaintiffs' petition for failure to state a claim upon which relief can be granted.
Affirmed.