NOT DESIGNATED FOR PUBLICATION

No. 123,091

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERT PAUL DUNCAN and DENISE SUE DUNCAN,
*Appellants*,

v.

RICHARD ZINGRE, DAVE MARTIN, DAVE BRUNER,
RANDY NICHOLS, JOLYNNE MITCHELL, CINDY BARTELSMEYER,
CHERYL ADAMSON, and JEAN PARKER,
*Appellees*.

MEMORANDUM OPINION

Appeal from Bourbon District Court; STEVEN C. MONTGOMERY, judge. Opinion filed September 3, 2021. Affirmed.

*Robert Paul Duncan and Denise Sue Duncan*, appellants pro se.

*Andrew D. Holder*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Overland Park, and *Kenton E. Snow* and *Philip D. Albrecht*, of Rouse Frets White Goss Gentile Rhodes, P.C., of Leawood, for appellees.

Before SCHROEDER, P.J., MALONE, J., and BURGESS, S.J.

PER CURIAM: Robert and Denise Duncan own the Beaux Arts Centre, which is a historic building in Fort Scott, Kansas. They brought a tort claim against several public officials asserting that the officials negligently and fraudulently determined the Beaux Arts Centre was required to comply with a fire code "footprint." The public officials moved for dismissal of the case. The Bourbon County District Court dismissed the suit, holding that the court lacked subject matter jurisdiction because the Duncans did not

1

substantially comply with K.S.A. 12-105b(d), which relates to notice requirements for the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 et seq. The Duncans now appeal that dismissal, the denial of their request for a change of judge, and the overruling of their objections to conducting oral arguments remotely because of the COVID-19 pandemic. After careful review of the record on appeal, we affirm the dismissal of the suit for lack of subject matter jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND

At the time of litigation, the Duncans owned a historic building in Fort Scott (the City) named the Beaux Arts Centre. In mid-June 2015, Fort Scott City Manager Dave Martin allegedly told the Duncans they could proceed with their renovations to the building without a fire code "footprint." A "code footprint" is "a building and life safety code compliance document that contains both graphic and narrative information and that meets the requirements of" the Kansas Fire Prevention Code. K.A.R. 22-1-7(a)(1). The Duncans spent the next two years renovating the building.

On January 12, 2018, Richard Zingre, an architect, inspected the Beaux Arts Centre on behalf of the City for code compliance. On February 14, 2018, the City sent the Duncans a letter setting forth the inspector's evaluation, which pointed out several issues with the building that needed to be corrected for the occupants' safety. The letter informed the Duncans they had 30 days to provide a plan to accomplish the required changes set forth in the evaluation.

On February 16, 2018, the Duncans closed the Beaux Arts Centre to the public. City Manager Dave Martin met with the Duncans at the Beaux Arts Centre on February 20, 2018, but the parties did not reach a compromise on the changes needed to the building. In the months that followed, the Duncans continued to raise complaints with the report at several city commission meetings. The Duncans also alleged that various public

2

officials provided incorrect or inaccurate information to the local newspaper about the footprint dispute. These complaints gained no traction.

Having been unsuccessful in convincing city officials that there were errors in the inspection, the Duncans filed a civil suit pro se against eight defendants: (1) City Manager Dave Martin; (2) City Deputy Fire Chief Dave Bruner; (3) City Commissioner Randy Nichols; (4) City Commissioner Cindy Bartelsmeyer; (5) City Commissioner Cheryl Adamson; (6) City Commissioner Jean Parker; (7) Fort Scott Mayor JoLynne Mitchell; and (8) Richard Zingre, the architect who inspected the Duncans' building on behalf of the City. In the suit, the Duncans asserted negligence and fraud. The petition made no reference to whether the Duncans complied with K.S.A. 12-105b(d).

On March 12, 2020, seven of the defendants—Martin, Bruner, Nichols, Bartelsmeyer, Adamson, Parker, and Mitchell—filed a motion to dismiss, which argued primarily that the district court lacked subject matter jurisdiction of the suit because the Duncans had not complied with K.S.A. 12-105b(d). Zingre subsequently joined the motion. In response, the Duncans argued that K.S.A. 12-105b(d) did not apply because

> "12-105b is a Uniform procedure for payment of claims, and deals with claims against a municipality that arise when a vendor, contractor, salaried or hourly paid employee, believes they have not received proper compensation from that municipality for services rendered. Plaintiffs are NOT vendors to the City, did not render service, had no monetary claim, had no salary or wage dispute, no contract, and claim no unpaid amounts."

On May 4, 2020, the district court granted the motion to dismiss, holding that K.S.A. 12-150b(d) applied and the Duncans failed to comply with its notice requirements. Such failure deprived the district court of subject matter jurisdiction. The case was dismissed without prejudice. Specifically, the district court held:

3

"The Court grants Defendants' Motion to Dismiss as Plaintiffs failed to comply with K.S.A. 12-105b. Plaintiffs do not allege in their responses to Defendants' Motion to Dismiss that they have complied with the notice of claim requirements. Rather, Plaintiffs argue that K.S.A. 12-105b is inapplicable. The Court finds that the statute applies to Plaintiffs' claims and it is not disputed that Plaintiffs failed to provide Defendants the required notice. The Court concurs with Defendants' arguments that the noncompliance is jurisdictional."

Subsequently, the Duncans filed several motions, which included a motion for seeking a change of judge. The basis of this motion was two emails from District Court Judge Montgomery's administrative assistant to counsel for Zingre regarding scheduling of the hearing on the motion to dismiss.

The district court held a remote hearing on this motion on June 1, 2020, via a combination of telephone and Zoom video conference. The Duncans were given the choice to use Zoom or appear by telephone, and they chose to appear via telephone. Prior to the hearing the Duncans, who appeared pro se, objected to the hearing being held remotely. The district court overruled this objection, explaining that "no personal courtroom appearances are currently being permitted and none have been permitted in any actions in the Sixth Judicial District following the initial closure of courts in the Spring of 2020, due to COVID19," and that the Duncans suffered no prejudice from the hearing format. Additionally, the district judge referenced guidance from Chief Justice Marla Luckert's COVID-19 administrative order and guidance from the Chief Judge of the Sixth Judicial District in finding that the virtual hearing was reasonable.

Robert Duncan also objected to this hearing format because he is hearing impaired. However, the district court still overruled the objection, noting that during the hearing "Mr. Duncan is participating, and he's made a statement to the Court. His wife is on the phone as well. And so it would appear to me that that hearing impairment is not of such a substantial nature as to prejudice the Duncans."

4

Judge Montgomery denied the motion for change of judge, finding that "the Duncans have failed to establish the grounds necessary for change of judge." At the hearing, he elaborated that the "Court staff's communications [with the defendants' counsel] were about procedural, not substantive matters."

After Judge Montgomery did not recuse himself, the Duncans filed an affidavit with Judge Amy Harth, Chief Judge of the Sixth Judicial District, pursuant to K.S.A. 20-311d(b). On June 2, 2020, Judge Harth denied the Duncans' motion for a change of judge, finding that they had alleged complaints about Judge Montgomery's rulings in the case, but that those "grievances . . . do not articulate bias, prejudice or interest by Judge Montgomery."

The Duncans appeal pro se.

ANALYSIS

On appeal, the Duncans present 10 issues in their brief. Rather than address each of the 10 issues separately, we have grouped the issues together and will address them based on the subject matter being argued therein to avoid unnecessary repetition. The issues raised on appeal will be addressed in the following manner. The Duncans' first, second, third, seventh, and eighth issues will be addressed first and will analyze the grant of the motion to dismiss, which dismissed the case without prejudice. The Duncans' fifth, sixth, and tenth issues will be addressed second, analyzing the denial of their motion for recusal. Last, we will address the Duncans' fourth and ninth issues regarding the district court holding a Zoom and telephonic hearing in light of the COVID-19 pandemic.

5

I.     *The district court did not err in dismissing the case for lack of subject matter jurisdiction.*

The Duncans argue that the district court erred in dismissing the case without prejudice. Specifically, they argue that the district court erred in finding they did not comply with the notice requirements of K.S.A. 12-105b(d).

The City employees filed a motion to dismiss the case under K.S.A. 60-212(b)(1) arguing that the Duncans had failed to comply with the notice requirements of K.S.A. 12-105b(d), which deprived the district court of subject matter jurisdiction. The district court granted their motion to dismiss, holding that K.S.A. 12-105b(d) applied and the Duncans failed to comply with its notice requirements, depriving the district court of subject matter jurisdiction.

"'Subject matter jurisdiction is the power of the court to hear and decide a particular type of action.'" *In re Estate of Lentz*, 312 Kan. 490, 496, 476 P.3d 1151 (2020). "Subject matter jurisdiction is vested by statute" and "[p]arties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, and parties cannot convey subject matter jurisdiction on a court by failing to object to the court's lack of jurisdiction." *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.2d 562 (2009). Whether subject matter jurisdiction exists is a question of law subject to unlimited review. 288 Kan. at 395. "Because subject matter jurisdiction is ordinarily conferred by statute, it should be noted that the interpretation of a statute is also a question of law subject to unlimited review." 288 Kan. at 395.

The KTCA creates liability for municipalities for any "negligent or wrongful" act or omission by any "employee" acting within the scope of his or her employment. K.S.A. 75-6103. Therefore, for a claim to be permitted under the KTCA, the conduct must be "negligent or wrongful," and an employee of the municipality or the municipality itself must have been the actor.

6

The Duncans do not argue that the actions of the public officials were not negligent or wrongful which would bring the claim outside of the KTCA. The Duncans brought two claims—negligence and fraud—both of which are causes of action that fall within the KTCA. See K.S.A. 75-6103; *Knop v. Gardner Edgerton Unified School District No. 231*, 41 Kan. App. 2d 698, 707-08, 205 P.3d 755 (2009). Additionally, there is no doubt that all the defendants—Zingre aside—were clearly employees of the City in their various roles as city manager, fire chief, city commissioners, and mayor. Further, Zingre was also an employee of the City in his capacity of performing the inspection and evaluation of the Duncans' property on behalf of the City. See *Nash v. Blatchford*, 56 Kan. App. 2d 592, 598, 603, 435 P.3d 562 (holding that physician working under contract with municipal hospital was an "employee" such that notice of suit against physician was required as prescribed by K.S.A. 12-105b[d] prior to suit being filed), *rev. denied* 310 Kan. 1062 (2019). Because the KTCA is applicable here, the district court correctly held that the notice requirements of K.S.A. 12-105b(d) were controlling.

K.S.A. 12-105b(d) requires specific notice procedures be followed before a claim can be brought against a municipality under the KTCA. Specifically, it provides, in part:

"Any person having a claim against a municipality or against an employee of a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, substantial compliance with the provisions

7

and requirements of this subsection shall constitute valid filing of a claim." K.S.A. 2020 Supp. 12-105b(d).

Substantial compliance with the notice of claim requirement under K.S.A. 12-105b(d) is a jurisdictional prerequisite to suing a municipality or its employee under the KTCA. See *Sleeth v. Sedan City Hospital*, 298 Kan. 853, Syl. ¶ 1, 317 P.3d 782 (2014); *Nash*, 56 Kan. App. 2d at 596.

Before determining if the Duncans substantially complied with the requirements of the notice of claim statute, we note that pro se litigants are treated the same as litigants represented by counsel. *O'Neil v. Herrington*, 49 Kan. App. 2d 896, Syl. ¶ 14, 317 P.3d 139 (2014).

> "A pro se litigant in a civil case is required to follow the same rules of procedure and evidence which are binding upon a litigant who is represented by counsel. Our legal system cannot function on any basis other than equal treatment of all litigants. To have different rules for different classes of litigants is untenable. A party in civil litigation cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules or to see that his or her case is properly presented to the court. A pro se litigant in a civil case cannot be given either an advantage or a disadvantage solely because of proceeding pro se." 49 Kan. App. 2d 896, Syl. ¶ 14.

Therefore, the requirements placed upon the Duncans by K.S.A. 12-105b(d) are not ameliorated by their pro se status.

Moving now to application of K.S.A. 12-105b(d) to the case at bar, a review of the petition and other filings in this case reveals both procedural and substantive failures in the Duncans' compliance with K.S.A. 12-105b(d). The Duncans argue, both below and before this court, that a demand letter sent by their then-attorney constitutes compliance with the notice of claim statute.

There are two procedural issues with the Duncans' notice. First, K.S.A. 2020 Supp. 60-209(c) requires parties to "allege generally that all conditions precedent have occurred or have been performed" when pleading. As discussed, substantial compliance with the notice of claim requirement under K.S.A. 12-105b(d) is a jurisdictional prerequisite to suing a municipality or its employee under the KTCA. See *Sleeth*, 298 Kan. 853, Syl. ¶ 1. Therefore, under K.S.A. 60-209(c), the condition precedent of compliance with K.S.A. 12-105b(d) must be pled in the petition. See *Reindl v. City of Leavenworth*, 361 F. Supp. 2d 1294, 1301-02 (D. Kan. 2005) (Under Federal Rule of Civil Procedure 9[c], "[d]efendants are correct that Plaintiffs are required to plead compliance with K.S.A. § 12-105b in their complaint."). The Duncans' petition makes no mention of their compliance with K.S.A. 12-105b(d).

Beyond their petition, the Duncans claim the demand letter sent by their then-attorney on March 3, 2018, complied with K.S.A. 12-105b(d). K.S.A. 12-105b(d) requires all notices of claim must be "filed with the clerk or governing body of the municipality." When evaluating proper service under K.S.A. 12-105b(d), courts look to Kansas' service of process statute, K.S.A. 60-304. See *Myers v. Board of Jackson County Comm'rs*, 280 Kan 869, 875-76, 127 P.3d 319 (2006). K.S.A. 60-304(d)(3) specifies that service of process may be made on a city by serving either the city clerk or the mayor. Here, while the demand letter does not indicate if or upon whom it was served, it was directed to the City's community development director rather than the city clerk or the mayor, which is not in compliance with K.S.A. 12-105b(d). See *Myers*, 280 Kan. at 869 (holding plaintiff was not compliant with K.S.A. 12-105b[d] when counsel served a substantially compliant notice of claim on the county counselor rather than a commissioner or clerk, even though county counselor promptly presented notice to board of county commissioners). K.S.A. 12-105b(d) was not complied with because the petition failed to plead a condition precedent to bringing the suit, and the alleged notice was filed with the wrong person.

9

Beyond these fatal procedural flaws, there are three substantive flaws with the demand letter. First, K.S.A. 2020 Supp. 12-105b(d) requires, in part, "(2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of." The demand letter does express disagreement over the City's requirement of a code footprint for the building, but it does not reference either a negligence or fraud cause of action nor does it provide a concise statement of the factual basis of the claim.

Second, K.S.A. 2020 Supp. 12-105b(d) requires that the notice include "the name and address of any public officer or employee involved, if known." The demand letter does not name any of the officials that were ultimately sued. At the time the letter was sent, the Duncans had already engaged numerous times with the employees and officials whom they would ultimately sue in the case at bar. Common sense dictates that the identities of these public officials were known at the time the demand letter was sent.

Third, K.S.A. 2020 Supp. 12-105b(d) requires a notice of claim to contain "(5) a statement of the amount of monetary damages that is being requested." The letter contains no statement of monetary damages. The Duncans allege that there was no way to know the damages at the time the letter was sent, but that does not excuse noncompliance with K.S.A. 12-105b(d). When a notice of claim fails to put a municipality on notice to the extent of damages sought, it does not substantially comply with K.S.A. 12-105b(d). See *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, 642, 205 P.3d 1265 (2009); *Garcia v. Anderson*, 46 Kan. App. 2d 1094, 1104, 268 P.3d 1248 (2012) (holding notice of claim noncompliant with K.S.A. 12-105b[d] when it contained no reference to damages claimed).

As a final point, the Duncans argue they substantially complied with K.S.A. 12-105b(d) because they "made Defendants aware, at the onset of this dispute, that [the

10

Duncans] would not allow the statute of limitations to expire without filing suit, unless the City amended their order and rescinded their errant submission." There is no indication whatsoever how the Duncans provided this notice. If it is in reference to the demand letter, as discussed above, that was wholly inadequate to constitute notice under K.S.A. 12-105b(d). If this alleged notice was verbally provided, verbal threats, promises, or statements of future litigation do not comply with K.S.A. 2020 Supp. 12-105b(d), which at its most basic level requires "a written notice."

As such, the Duncans' purported notice was also substantively deficient. Because the Duncans failed to comply with K.S.A. 12-105b(d), the district court did not have subject matter jurisdiction over this case and correctly dismissed it.

The Duncans also argue the district court erred in its dismissal of the case when it did so without finding any criminal activity on the part of the City and/or its actors. They argue they presented evidence such that the defendants should have been responsible for the "criminal offenses" of perjury, criminal lies, and deceptive commercial practice. It is patently impossible for the district court to make findings concerning criminal acts when no criminal charges have been brought. "The legislative branch of government enacts the law, the judiciary interprets those laws, and the executive branch enforces those laws until they are amended or held to be unconstitutional." 16A Am. Jur. 2d, Constitutional Law § 254. The district court does not decide which criminal charges are to be brought; that is the role of the prosecutors within the executive branch. The Duncans' argument on this point is meritless.

II.     *The motion for recusal was properly denied.*

The Duncans argue that both Judge Montgomery and Judge Harth improperly denied their motion for recusal. Specifically, in their motion the Duncans pointed to two

emails sent by Judge Montgomery's administrative assistant, Paige Leach, to Zingre's counsel, the first on February 28, 2020, and the second on March 17, 2020.

The February 28, 2020 email reads:

"Counsel,

"I am so sorry to do this to you but I have set a date and time for a Case Management conference in the case listed above. We will also hear the Motion to Dismiss. Judge Montgomery was assigned this case due to conflicts with other Judges. We do not usually have a time slot available to us in Bourbon County so we have to work around 4 other Judges. I have set the CMC for 3/26/20 at 2:30-3:30. You are more than welcome to appear by phone, but other parties will be present because they are pro se.

"Please let me know you have received this message, and I will go ahead and upload a notice and send them out to all parties.

"Also, there will be a Case Management Checklist attached to the Notice, please make sure that is on file no later than 3 days before our hearing.

"Thanks,

"Paige."

The March 17, 2020 email reads:

"Counsel,

"Attached is our most recent Administrative Order. We must continue all non-essential court proceedings through April 15, 2020. I will contact you with our new date for hearing once I speak to the other judges to see court availability.

"Thank you and sorry for the inconvenience.

"- Paige."

Any response to either email is not included in the record on appeal.

Judge Montgomery denied the motion, finding "the Court finds that the Duncans have failed to establish the grounds necessary for change of judge." At the hearing, he

12

elaborated that the "Court staff's communications [with the defendants' counsel] were about procedural, not substantive matters." Further, he elaborated that the Duncans were

> "incorrect about their interpretation of Court staff's ability to have contacts with one party or the other. And I would point out that just this morning Mrs. Duncan apparently called into my staff [judicial assistant] and had a conversation with her about setting up the phone conference today.
>
> "Well, that was not an ex parte communication. So, in essence, the Duncans are utilizing the same form of communication with Court staff that they complain about Court staff having with counsel for the defendants.
>
> "I can assure them that there is no support and no legal precedent supporting their position that Court staff cannot have communication with one party at a time. It happens all the time. Daily it happens probably at least 25 times a day, if we are here for a full day, and in some cases a lot more than that.
>
> "But moreover, counsel for the defendants are correct when they point out that Court staff's communications were about procedural, not substantive matters. There is a huge difference there."

After Judge Montgomery did not recuse himself, the Duncans filed an affidavit with Judge Amy Harth, Chief Judge of the Sixth Judicial District, pursuant to K.S.A. 20-311d(b). On June 2, 2020, Judge Harth denied the Duncans' motion for a change of judge.

Appellate courts exercise de novo review over whether a district court judge's recusal is required. *State v. Moyer*, 306 Kan. 342, 369, 410 P.3d 71 (2017). The interpretation of a Supreme Court rule, like the interpretation of a statute, is a question of law. *Dawson v. BNSF Railway Co.*, 309 Kan. 446, 451, 437 P.3d 929 (2019).

The Duncans moved for recusal under K.S.A. 20-311d, which permits a party to file a motion for change of judge if the party believes that the assigned judge cannot afford that party a fair trial in the action. One of the grounds on which a party may allege a new judge should be assigned, as the Duncans did, is if "[t]he party or the party's

13

attorney filing the affidavit has cause to believe and does believe that on account of the personal bias, prejudice or interest of the judge such party cannot obtain a fair and impartial trial or fair and impartial enforcement of post-judgment remedies." K.S.A. 20-311d(c)(5).

The Duncans argue that Judge Montgomery could no longer preside over the case because his personal bias prevented them from receiving a fair ruling, and his bias is demonstrated by ex parte communications, specifically court staff communicating with defendants' counsel regarding a scheduling matter and the politeness in the emails.

Kansas Code of Judicial Conduct Rule 2.9 prohibits a judge from engaging in ex parte communications. However, ex parte communications are permitted if they are for scheduling, administrative, or emergency purposes and do not address substantive matters. Kansas Rule of Judicial Conduct 2.9(A)(1) (2021 Kan. S. Ct. R. 491). Specifically, the rule states:

> "(A) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a *pending* or *impending matter*, except as follows:
>> (1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:
>>> (a) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and
>>> (b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond." Kansas Rule of Judicial Conduct 2.9(A)(1) (2021 Kan. S. Ct. R. 491).

Here, the communications from the judge's judicial assistant are clearly related to scheduling. There is no indication that any party received a procedural, substantive, or tactical advantage from the emails. The first communication informed counsel of the date of the case management conference. It did not ask if there was a better day for the hearing to occur, nor did it ask if counsel had a preference. The parties were informed of the substance of the communication via the notice of hearing that was filed 20 minutes after the email was sent.

The second email informed counsel that the scheduled hearing was required to be continued because of the unique circumstances at the beginning of the COVID-19 pandemic. The register of actions for the case reflects the same information—that the hearing was rescheduled because of the administrative order limiting the nonessential operations of the court. While it is not clear precisely how the Duncans received notice that the hearing was rescheduled, it is equally unclear what prejudice they encountered from this communication. The case management conference never happened because of a superseding event in the case—the defendants' motion for dismissal, which disposed of the case. There is no allegation that the Duncans missed a hearing because they were not aware it had been moved. Likewise, there is no indication what actual prejudice the Duncans suffered by not being informed of the scheduling notification email between Leach and Zingre's counsel. The Duncans made no showing how these ex parte communications created or indicated a bias or prejudice in Judge Montgomery that compromised the Duncans' ability to obtain a fair and impartial trial. See K.S.A. 20-311d(c)(5). Judge Montgomery properly denied the motion.

Because there was no error in Judge Montgomery's denial of the motion, there is no error in Judge Harth's denial of the same complaint brought to her under K.S.A. 20-311d(b).

III.    *The district court did not err in overruling an objection to a remote hearing during the Covid-19 pandemic.*

Finally, the Duncans argue that the district court erred in overruling their objection to the hearing on their motion to recuse being held remotely. Specifically, they argue they were prejudiced because Robert Duncan has a hearing impairment and the parties did not know how to operate Zoom, nor did they have enough internet bandwidth for a Zoom call.

Prior to the hearing, all parties were informed the June 1, 2020 hearing on the Duncans' motion for recusal would take place over Zoom because of the public health emergency of COVID-19. The Duncans filed a formal objection to a Zoom hearing prior to the hearing. Their objection includes several factual assertions unrelated to an objection to a remote hearing, but they did eventually assert that they did not have familiarity with Zoom or the internet bandwidth to sustain such a call, which would prejudice them. The Duncans also stated at the end of their motion that Robert had a hearing impairment which made it difficult for him to fully intake "audio in any form."

To address the Duncans' concerns, they were given the choice to use Zoom or appear by telephone. They chose to appear via telephone. The district court overruled their objection to the remote hearing, explaining that "no personal courtroom appearances are currently being permitted and none have been permitted in any actions in the Sixth Judicial District following the initial closure of courts in the Spring of 2020, due to COVID19," and that the Duncans suffered no prejudice from the hearing format. Additionally, the district judge referenced guidance from Chief Justice Marla Luckert's COVID-19 administrative order and guidance from the Chief Judge of the Sixth Judicial District in finding that the virtual hearing was reasonable. Regarding Robert Duncan's hearing loss, the district court found "Mr. Duncan is participating, and he's made a statement to the Court. His wife is on the phone as well. And so it would appear to me

16

that that hearing impairment is not of such a substantial nature as to prejudice the Duncans."

The district court judge "has broad discretion in controlling the courtroom proceedings." *State v. Kahler*, 307 Kan. 374, 386, 410 P.3d 105 (2018); *State v. Hamilton*, 240 Kan. 539, 545, 547, 731 P.2d 863 (1987) (holding "trial judge is not merely a moderator, but is the governor of the trial" and "a trial court . . . has broad discretion" in controlling trials). Our standard of review on this issue is guided by these principles and, therefore, requires this panel to consider the district court's holding of the hearing on the motion to recuse remotely under an abuse of discretion standard. See *State v. Rochell*, 297 Kan. 32, 36, 298 P.3d 293 (2013). "A trial court abuses its discretion if its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact." *Hodes & Nauser v. Schmidt*, 309 Kan. 610, 619, 440 P.3d 461 (2019). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

At the time of the hearing on June 1, 2020, Kansas Supreme Court Administrative Order No. 2020-PR-32 was in effect, which controlled the operation of Kansas courts during the COVID-19 pandemic. The administrative order begins by discussing the unique and unprecedented situation in which courts, and the world, found themselves in the spring of 2020 and the necessity for such a drastic shift in operations. The order differentiated between "essential" and "nonessential" functions of the courts. Essential functions related to specific events in criminal, juvenile offender, care and treatment, child in need of care, and protection order cases. Kansas Supreme Court Administrative Order No. 2020-PR-32, dated April 3, 2020, p. 2-4. Other court operations not specifically listed were "nonessential."

17

The administrative order required that "[n]onessential functions [of the court] may be performed in a manner consistent with this order as local resources and circumstances allow." Order No. 2020-PR-32, p. 2. Further, the administrative order required, "[n]o hearing related to a nonessential function may be conducted except by two-way telephonic or electronic audiovisual communication." Order No. 2020-PR-32, p. 5.

The district court balanced both the needs of the Duncans and the requirements of the administrative order and accommodated the Duncans' Zoom limitations by allowing them to appear via telephone. Under these facts, the district court did not err in holding the hearing on the motion to recuse remotely. Doing otherwise would have violated the administrative order from the Kansas Supreme Court.

The Duncans also argue that they were prejudiced by the hearing format because of Robert's hearing loss. However, the record reflects that Robert had no issue participating in the hearing. At the beginning of the hearing, Denise Duncan and opposing counsel both indicated that they were having issues hearing each other, and the district court addressed these issues. No mention of anyone's inability to hear the proceedings was ever mentioned again in the hearing. Robert was given opportunities to present his arguments, of which he availed himself without issue. At one point Robert did remark, "What did he say?" Both Denise and the district court reiterated what was said. Robert discussed the information he inquired about with the district court immediately after the clarification, which indicates he was able to hear the proceedings. Additionally, Robert held discussions back and forth with the district court when he was presenting his arguments. As the district court noted, "Mr. Duncan addressed the Court multiple times and appeared to fully grasp all of the conversations and issues at hand. He exhibited no confusion or inability to follow the argument stream."

Finally, the June 1, 2020 hearing was intended to address the Motion for Recusal, not the dismissal of the case. The district court had already ruled on the defendants'

18

motion to dismiss and was waiting for a final, formalized journal entry from counsel, which would then be filed. As the district court stated, there was no nexus between the substantive and dispositive ruling in this case and the hearing format, removing any prejudice surrounding the dismissal of the case based on the hearing's format.

The Duncans have failed to meet their burden in showing that the district court abused its discretion in holding the hearing remotely. They point to no error in law or fact, and based on the COVID-19 pandemic and the Kansas Supreme Court's administrative order, it was not unreasonable to conduct the hearing remotely. There was no error.

Affirmed.